EDWARD T. COOPER *et al.*

*v.*

DAVID J. BEERS *et al.*

*Filed at Springfield November 2, 1892.*

1. DESCENTS—*personal property distributed pursuant to the law of the domicile of the owner.* Section 1 of chapter 39, relating to descents, so far as it attempts to change the common law rule whereby personal property follows the person of its owner, and is distributed pursuant to the law of his domicile, applies only to property "in this State." Debts have no fixed *situs,* and hence are still governed by the common law. They must still accompany and remain with the owner. The possession of evidence of indebtedness of a non-resident for the purpose of safe keeping, at the time of his death, does not pass the title, and they are governed by the law of the owner's domicile on his death.

2. SAME—*rule as to debts.* At common law, for the purposes of administration, a simple contract debt is assets where the debtor resides. But after the payment of debts all personal property is distributed according to the law of the country of the domicile of the intestate.

3. SAME—*choses in action deposited with an agent.* Where a non-resident dies owning choses in action in the form of notes and bonds, which are deposited with an agent in this State for safe keeping, and

letters of administration are taken out in this State, after the payment of debts and costs the residue will be distributed according to the law of the domicile of such decedent.

4. RESIDENCE—*evidence to show residence and domicile.* Where a resident of the State of Ohio married in this State, and shortly afterward moved to St. Louis, Mo., with his wife, rented property, boarded, and went into business for several years in aiding in the publication of a newspaper in which he had an interest, this will be sufficient to show a residence and domicile of both husband and wife, in the absence of evidence that such residence and employment were with a present intention of returning to a former residence after the lapse of some definite period of time.

5. DOMICILE—*continues until another residence is acquired.* In such case the domicile of the man and wife in St. Louis will remain, not only until it is abandoned, but also until a new domicile is acquired by actual residence within another jurisdiction, coupled with the intention of making the last acquired residence a permanent home.

6. SAME—*domicile of wife follows residence and domicile of husband.* Where a woman having a residence and home in this State marries a man who had a domicile in another State, to which she moves, her residence, by the act of marriage, will be changed to that of her husband.

7. After the marriage of a woman, and so long as the relations between her and her husband are not adverse, his domicile will be her domicile, and will change with his throughout their married life.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of McLean county; the Hon. THOMAS F. TIPTON, Judge, presiding.

Messrs. KERRICK, LUCAS & SPENCER, for the appellants:

Under the facts in this case this property was not assessable in Illinois, and therefore the *situs* of it was not in this State. *Goldgart* v. *People,* 106 Ill. 25; *People* v. *Davis,* 112 id. 272.

Personal property, wherever situated, descends or is distributed according to the law of the place of decedent's last domicile.

As to personal property, the rights of next of kin depend upon the laws of the country of the domicile of the intestate, from whom the succession is claimed. This is the general American doctrine, and is international law. Schouler on

Executors, secs. 16, 19; Story on Conflict of Laws, sec. 379, p. 481; Woerner on Administration, 131; 2 Kent's Com. (5th ed.) 429; *Ennis* v. *Smith,* 14 How. 400; *Atchison* v. *Lindsey,* 6 B. Mon. 86; *Schultz* v. *Pulver,* 3 Paige, 182; *Harvey* v. *Richards,* 1 Mason, 381; *Garland* v. *Rowan,* 2 S. & M. 617; *Bradley* v. *Lowery,* 1 Speer's Eq. 1; *Fay* v. *Haven,* 3 Metc. 199; *Hunter* v. *Bryson,* 5 G. & J. 483; *Wilkins* v. *Ellett,* 9 Wall. 740; *Wilkins* v. *Ellett,* 108 U. S. 256; *Russell* v. *Madden,* 95 Ill. 485; *Bonnell* v. *Holt,* 89 id. 71; *Young* v. *Wittenmyre,* 22 Ill. App. 500; *Young* v. *Wittenmyre,* 123 Ill. 303; *Public Admr.* v. *Hughes,* 1 Brad. Sur. 125; *Churchill* v. *Prescott,* 3 id. 233; *Brown* v. *Sherwood,* id. 85; *St. Jorjo* v. *Beckwith,* 2 id. 205.

Although our Statute of Descents has been substantially the same as the present since 1833, and although the term "non-resident" is used in the ordinance of 1787, our courts have adopted the common law rule for the descent of personal property, and to that extent its decisions should be construed as interpreting our statute as meaning the same as the common law. *Russell* v. *Madden,* 95 Ill. 485; *Bonnell* v. *Holt,* 89 id. 71; *Young* v. *Wittenmyre,* 22 Ill. App. 500; *Young* v. *Wittenmyre,* 123 Ill. 303; *West* v. *Fitz,* 109 id. 425; *Keegan* v. *Geraghty,* 101 id. 26; *Stoltz* v. *Doering,* 112 id. 234.

The *locus* of the evidence of indebtedness does not fix the *situs* of the property represented by it. The *situs* is fixed by the domicile of the deceased. *Moore* v. *Jordan,* 36 Kan. 271; *Waterman* v. *Alden,* 16 Bradw. 588; *Lawrence* v. *Kitteridge,* 21 Conn. 581.

The domiciliary administrator is entitled to the evidences of indebtedness due his intestate, and can maintain replevin, trover or a bill in equity to recover them. Woerner on Administration, sec. 309; p. 650; *Bullock* v. *Rodger,* 16 Vt. 294; *Sears* v. *Carrier,* 4 Allen, 339; *Morton* v. *Preston,* 18 Mich. 60.

The status of the property is fixed by the decease of the intestate, and the title of the administrator relates back to

that time. *Makepeace* v. *Moore*, 5 Gilm. 474; *Walker* v. *Craig*, 18 Ill. 116; *Hickox* v. *Frank*, 102 id. 660.

A foreign or domiciliary administrator can accept payment of a note and release or foreclose a mortgage. Woerner on Administration, sec. 161, p. 364; *Bullock* v. *Rodgers*, 16 Vt. 294; 2 Kent's Com. 432, and note.

Messrs. PHILLIPS & PORTER, and Mr. CALVIN RAYBURN, for the appellees:

The domicile of a wife follows that of her husband. *Davis* ·v. *Davis*, 30 Ill. 180; *Kennedy* v. *Kennedy*, 87 id. 250; *Ashbaugh* v. *Ashbaugh*, 17 id. 476; Woerner on Administration, sec. 206, p. 442; Schouler on Executors, secs. 21, 53; 5 Am. and Eng. Ency. of Law, 868.

A domicile once acquired continues until a new one is acquired, and to effect a change of domicile there must be an actual abandonment of the first domicile, coupled with an intention never to return to it, and there must also be a new domicile acquired by actual residence at another place, coupled with the intention of making the last acquired residence a permanent home. Domicile is made by actual residence, joined with an intention to make such residence a home. *Hayes* v. *Hayes*, 74 Ill. 312; Schouler on Executors, sec. 23; Woerner on Administration, 443; Dicey on Domicile, 44 App. 332; Brantley on Personal Prop. sec. 354; Story on Conflict of Laws, 43, 44; *Embry* v. *Millar*, 1 A. K. Marsh. 300; *Harris* v. *Firth*, 4 Cranch, 710; *State* v. *Hallett*, 8 Ala. 159; *Mitchell* v. *United States*, 21 Wall. 350; *Shepard* v. *Cassady*, 20 Texas, 24; *Borland* v. *Boston*, 132 Mass. 89; *Pickering* v. *Cambridge*, 144 id. 244; *Sherwood* v. *Judd*, 3 Brad. Sur. 267; *Isham* v. *Gibbons*, 1 id. 69; *Ringgold* v. *Barley*, 5 Md. 186.

Two things must concur to constitute domicile: First, residence; and second, the intention of making it the home of the party. There must be the fact and the intention. ·(Story on Conflict of Laws, sec. 44.) From the facts, as shown by the

evidence, the first might be inferred, but, we think, not the latter. Those who assert the affirmative must prove it, and therefore the burden is on those who claim that Dr. and Mrs. Cooper had their domicile in Missouri, to prove not only the residence, but also that such residence was had with the intention of making it their "true, fixed, permanent home." *Bell* v. *Kennedy*, L. R. 1 H. L. 307; *White* v. *Brown*, 1 Wall. 217; *Mitchell* v. *United States*, 21 Wall. 350; *Dupuy* v. *Wurtz*, 53 N. Y. 559.

Change of domicile from one country or State to another, under the same sovereign or government,—as, from England to Scotland, or from one of the United States to another,—is more easily inferred than a change to a foreign country. *Wicker* v. *Hume*, 7 H. L. C. 159; *Moorehouse* v. *Lord*, 10 id. 286; *Attorney General* v. *Pottinger*, 6 H. & N. 733.

Every person of full age having a right to change his domicile, it follows that if he removes to another place with the intention to make it his permanent residence, (*animo manendi*,) it becomes instantaneously his place of domicile. Story, sec. 46; *Detroit* v. *Palmyra*, 72 Me. 256; *Hampden* v. *Levant*, 59 id. 557; *Bilberica* v. *Chelmsford*, 10 Mass. 394.

In the case of death *in itinere*, the last domicile is the one toward which the person is journeying. Westlake on International Law, sec. 244; *Forbes* v. *Forbes*, Kay, 341; *Munroe* v. *Douglas*, 5 Mad. 379; *Udney* v. *Udney*, L. R. 1 H. L. 441; Wharton on Conflict of Laws, (2d ed.) sec. 58; *Still* v. *Woodville*, 38 Miss. 646; *Munro* v. *Munro*, 7 C. & F. 877; *Ex parte Blumer*, 27 Texas 734.

A person may testify to his own intentions as to domicile. *Wilkins* v. *Marshall*, 80 Ill. 78; *Reeder* v. *Holcomb*, 105 Mass. 93; Wharton on Evidence, sec. 482; *Maxwell* v. *McClure*, 3 MacQ. 852; *Wilson* v. *Wilson*, L. R. 2 P. M. 435; *Kennedy* v. *Ryall*, 67 N. Y. 380; *Fisk* v. *Chester*, 8 Gray, 506.

The *situs* of choses in action and debts is as follows: First, the *situs* of rent is where the land lies; second, the *situs* of a

debt induced by a judgment is where the record of the judgment is; third, the *situs* of a debt secured by specialty is where the bond is; fourth, the *situs* of a simple contract debt is where the debtor is. *Byron* v. *Byron*, Cro. Eliz. 472; *Troman* v. *Bradshaw*, 3 Salk. 70; *Troman* v. *Bradshaw*, Caruth, 373; *Attorney General* v. *Bonwas*, 4 M. & M. 171; *Holcomb* v. *Phillips*, 16 Conn. 127; *Sanders* v. *Weston*, 74 Me. 90; *Jahier* v. *Roscoe*, 62 Miss. 700; *Vaughn* v. *Barrett*, 5 Vt. 333; *Owen* v. *Miller*, 10 Ohio St. 136; *Pinvey* v. *Gregory*, 102 Mass. 186; *Wyman* v. *Halstead*, 109 U. S. 655; *Arnold* v. *Arnold*, 62 Ga. 627; *Fox* v. *Carr*, 16 Hun, 434; *Beers* v. *Shannon*, 73 N. Y. 292; Schouler on Executors, sec. 24.

The residence of a party owing a debt is the *situs* of such debt only for the purpose of founding administration for collecting, if the debtor refuses to pay. It is not the *situs* of the debt for distributive purposes. Woerner on Administration, sec. 309, note 8, p. 650; *Wyman* v. *Halstead*, 109 U. S. 654; *Owen* v. *Miller*, 10 Ohio St. 136; *Slocum* v. *Sanford*, 2 Conn. 533; *Holmes* v. *Remsen*, 4 Johns. Ch. 460; *Wilkins* v. *Ellett*, 9 Wall. 740; *Wilkins* v *Ellett*, 158 U. S. 256.

It is discretionary with the courts of the State where the ancillary administration is granted, to order distribution of the assets remaining after the payment of debts, according to the law of domicile of the intestate, or to remit the effects to an administrator at the place of domicile for such distribution. *Harvey* v. *Richards*, 1 Mason, 380; *In re Hughes*, 95 N. Y. 55; *Fretwell* v. *McLemore*, 52 Ala. 124; *Dawes* v. *Head*, 3 Pick. 128; 8 Am. and Eng. Ency. of Law, 418; *Gravely* v. *Gravely*, 25 S. C. 1; *Gurie* v. *O'Daniel*, 1 Binn. 349; *Fox* v. *Carr*, 16 Hun, 434; *Wright* v. *Phillips*, 56 Ala. 69; Brantley on Personal Prop. 369; 3 Redfield on Wills, 27; *Burr* v. *Sherwood*, 3 Brad. Sur. 85; *Carmichael* v. *Ray*, 5 Ired. Eq. 365; *Mackey* v. *Cox*, 18 How. 100; 3 Williams on Executors, 1767.

Messrs. RUNNELLS & BURRY, for the appellee Dunning.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

The Appellate Court held that the residence of Cordelia T. Cooper, which had theretofore been Bloomington, in this State, when she intermarried with Edward T. Cooper, was by that act changed to his residence, which was Cincinnati, Ohio, and that thenceforth his residence was, in legal contemplation, her residence; and that court found that Cordelia T. Cooper, and her husband, Edward T. Cooper, after their marriage, acquired and retained for several years, a residence in St. Louis, Missouri, which they afterwards abandoned, intending to ultimately become residents of either Bloomington or Salem, in this State, but that before they had determined which place, or had adopted any home at either, she died intestate, and that her domicile, at the time of her death, for the purpose of distribution of her estate, was therefore Missouri, and not Illinois; and the court also further held, that the property here in controversy, being *choses in action*, in the form of notes and bonds, and having been, shortly before the death of Mrs. Cooper, put in the hands of Capen, at Bloomington, in this State, temporarily, for safe keeping, where they remained at the time of her death, was not, in a legal sense, "property in this State,"—that the property in such notes and bonds followed the person of Mrs. Cooper, and so her domicile, at the time of her death being in Missouri, it, in legal contemplation, was her "property in Missouri." We concur in the correctness of these rulings.

The contention of counsel for appellant that when Mrs. Cooper abandoned Missouri with the intention of making Illinois,—that being the domicile of her origin,—her future home, Illinois instantly became the country of her domicile, can have no application, because, in the first place, the proof fails to show with certainty a fixed and unalterable intention to make Illinois presently her home. The proof in that respect, even when construed most favorably for appellant, shows that

the locality in Illinois was never fixed, and so long as that was left uncertain it is manifest the intention must be conjectural rather than certain and positive. No time was ever fixed when residence should begin, and no act intended as an act of removal or in aid of removal to Illinois is proved. But waiving this, in the second place, after the marriage of Mrs. Cooper, and so long as the relations between herself and her husband were not adverse, his domicile was her domicile, and changed with his throughout their married life. Story's Conflict of Laws, (4th ed.) sec. 46, and note 1, on p. 58; *Davis* v. *Davis,* 30 Ill. 180; *Kennedy* v. *Kennedy,* 87 id. 250; Am. and Eng. Ency. of Law, p. 868. There is no pretense in argument, and no evidence in the record tending in any degree to prove that Mrs. Cooper's husband was ever domiciled in Illinois.

The further contention of counsel for appellant that the proof fails to show a domicile in St. Louis is clearly untenable, for it is proved that there was residence and permanent business employment there for several years, and this is not rebutted by evidence that such residence and employment was with a present intention of returning to a former residence, after the lapse of some definite period of time. The domicile in Missouri remained the domicile of the Coopers, not only until it was abandoned, but also until a new domicile was acquired by actual residence within another jurisdiction, coupled with the intention of making the last acquired residence a permanent home. (*Hayes* v. *Hayes,* 74 Ill. 316.) At common law, for the purposes of administration, a simple contract debt is assets where the debtor resides. Williams on Executors, (3d Am. ed.) 261, 262, *263; *Tryman* v. *Halstead,* 109 U. S. 654, and cases cited on p. 656. But, after the payment of debts, all personal property is distributed according to the law of the country of the domicile of the intestate. 2 Kent's Com. (8th ed.) 542, *431; 2 Williams on Executors, (3d Am. ed.) 1299, *1301; Story's Conflict of Laws, sec. 380;

*Bonnell* v. *Holt,* 89, Ill. 71; *Russell* v. *Madden,* 95 id. 485; *Young* v. *Wittenmyre,* 123 id. 303.

The still further contention of counsel for appellant that our statute changes the common law rule whereby personal estate follows the person of its owner, and is distributed pursuant to the law of his domicile at the time of his death, is sufficiently answered by the fact that the statute has, by its own terms, reference only to "property in this State," (Rev. Stat. 1874, sec. 1, chap. 39,) and since the only property right which there can be in a debt is the mere right to receive payment of it, it is impossible that there can be anything of a tangible nature connected with such right which can occupy locality, and so the property right must accompany and remain with the person of the owner of the debt, and therefore it can not be in this State when the domicile of the owner is in another State. And it is accordingly said by Kent (vol. 2, 8th ed.) in his Commentaries, (p. 537, *429): "Debts and personal contracts have no locality, *debita sequuntur personam debitoris.*" And Story in his Conflict of Laws, (4th ed. sec. 362,) also says: "Contracts respecting personal property and debts are now universally treated as having no *situs* or locality, and they follow the person of the owner in point of right, *mobilia inherent ossibus domini,*) although the remedy in them must be according to the law of the place where they are sought to be enforced." See, also, to like effect, *Lawrence* v. *Kitteridge,* 21 Conn. 581; *Atwood* v. *Insurance Co.* 14 id. 562; *Speed* v. *Kelley,* 59 Miss. 47; *Moore* v. *Jordan,* 36 Kan. 271. And so we ruled, on the question of the *situs* of debts for the purpose of taxation, in *Goldgart* v. *The People,* 106 Ill. 25, and *The People* v. *Davis,* 112 id. 272.

The possession of the evidences of the indebtedness in Bloomington by Capen invested him with no title, and so, of necessity, the title remained with Mrs. Cooper at her domicile at the time of her death.

The judgment is affirmed.       *Judgment affirmed.*